[Civ. No. 14166. Second Dist., Div. Three. July 20, 1944.]

Estate of JOHN BLAK, Deceased. JOHN C. DOEST, Appellant, v. HENDRIKA DOEST et al., Respondents.

Marshall Stimson and Noel Edwards for Appellant.

Walter G. Danielson for Respondents.

DESMOND, P. J.—John C. Doest, who is the surviving brother of Gysbertus Doest, otherwise known as John Blak, appeals from two orders in probate by which he was barred from taking any interest in the estate of his brother. Both orders were made upon the same day, December 29, 1942, when two contested petitions were consolidated for hearing: (1) petition for partial distribution filed by appellant, in which he stated that, as an heir at law of the decedent, he was entitled to all the residue of the estate; (2) a petition to determine heirship filed by Hendrika Doest, the daughter of decedent and a citizen of The Netherlands, residing in Amsterdam, in which she stated that she was the sole and only heir at law of the decedent.

In support of his claim that he is the heir at law entitled to inherit his brother's property, appellant directs our attention to sections 259, 259.1 and 259.2 of the Probate Code, enacted by the Legislature in 1941, effective on July 1st of that year. (Stats. 1941, chap. 895.) They read as follows:

"§ *259. Aliens residing abroad: Dependence of rights upon reciprocity.* The rights of aliens not residing within the United States or its territories to take either real or personal property or the proceeds thereof in this State by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take real and personal property and the proceeds thereof upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are inhabitants and citizens and upon the rights of citizens of the United States to receive by payment to them within the United States or its territories money originating from the estates of persons dying within such foreign countries.

"§ *259.1. Same: Burden of establishing that rights are reciprocal.* The burden shall be upon such nonresident aliens to establish the fact of existence of the reciprocal rights set forth in Section 259.

"§ *259.2. Same: Disposition of property on finding of*

*non-reciprocity.* If such reciprocal rights are not found to exist and if no heirs other than such aliens are found eligible to take such property, the property shall be disposed of as escheated property.''

At the trial, a portion of a letter from the State Department at Washington, D. C., addressed to counsel for appellant, was received in evidence, reading as follows: ''In reply to your letter of July 21, 1942, you are informed that there is not in force, between the United States and The Netherlands, any treaty or other agreement containing provisions relating to the rights of nationals of either country, with respect to inheritance of property in the other country.'' The deposition of appellant was then offered and admitted in evidence, showing that he is a resident of the city of San Francisco; that he had last seen his brother, Gysbertus Doest, in 1923, at Santa Barbara, California; that he had not received any letters from him since that date; that the decedent was married in Amsterdam in 1902, to Hendrika Van Straaten, who died in the following year; that deceased had one daughter, Hendrika Doest, and deponent was unable to say whether or not she was living; that he knew of no other immediate relatives of the deceased. After the introduction of these documents, it was stipulated that Henderika Doest, the decedent's daughter, is an alien, resident in Amsterdam, Holland, and that The Netherlands was occupied by the Germans by force in June, 1940. (This was an error, such occupation having taken place in May, 1940.)

Thereupon the respondents offered in evidence various exhibits, which were admitted without objection. The first, Exhibit A, is a letter, dated June 18, 1942, from the Embassy of The Netherlands at Washington, D. C., which reads as follows:

''To Whom It May Concern

''In connection with certain probate matters pending in the Superior Court of the State of California, in and for the County of Los Angeles, The Netherlands Ambassador begs to certify hereby that under Netherlands law the reciprocity as meant in Sections 259, 259.1 and 259.2 of the California Code, is accorded citizens and residents of the United States.

''Article 9 of the Act of May 15, 1829, (State Law Record No. 28) provides that the civil law obtaining in the Kingdom

of the Netherlands shall equally apply to Netherlands and to aliens, unless a statute shall provide for the contrary. As the Netherlands decedents' estate law does not contain a provision by which the reciprocity under consideration is denied, such reciprocity has to be deduced therefrom by indirection; by the fact that no discrimination is made therein as between the hereditary rights of Netherlanders and those of aliens.

"The reciprocity in question, which was in full effect and force at the time of the invasion of The Netherlands by German forces could only be repealed by virtue of legal provision enacted by the Royal Netherlands Government recognized as such by the Government of the United States. As, however, the Royal Netherlands Government, temporarily residing and exercising its functions in London, England, which is recognized by the Government of the United States as the lawful government of Netherlands to all intents and purposes, has not modified the Netherlands decedents' estate law in any shape or fashion, the reciprocity which is the subject of this statement continues in full force and effect.

| | |
|---|---|
| Washington, D. C. | For the Ambassador |
| June 18, 1942 | (Signed) H. REIMENS." |

■■■ In view of the authority which attaches in the present international crisis to statements of the duly accredited Envoy Extraordinary and Minister Plenipotentiary of The Netherlands relative to actions or decrees by the Royal Netherlands Government, the foregoing document was properly accepted as conclusive by the trial court (*Anderson* v. *N. V. Transandine etc.*, 28 N.Y.S.2d 547, 551; affirmed, 31 N.Y.S.2d 194; *Agency of Canadian Car & Foundry Co., Lim.*, v. *American Can Co.*, 2 Cir., 258 F. 363 [169 C.C.A. 379, 6 A.L.R. 1182].), and, in itself, practically decides adversely the claim of appellant that respondents failed to sustain the burden of establishing the reciprocal rights mentioned in section 259 of the Probate Code. This conclusion is fortified by reference to other documents admitted in evidence, including Exhibit D, a translation certified as true, from the office of The Netherlands Ambassador, of article 9 of the Act of May 15, 1829, reading, "The civil law of the Kingdom shall equally apply to Netherlands and to aliens, unless a statute shall provide for the contrary." It was stipulated that this law is still in effect and that it has not been amended. Exhibit C consists of a

letter from the Federal Reserve Bank of New York, to which is attached Royal Decree of May 24, 1940, and power of attorney to the Minister of Netherlands, Washington, D. C. It appears from the transcript that it is unnecessary to incorporate a copy of this letter since ''it is admitted that Adrian Hartog, under the law, has the right to represent Hendrika Doest as an alien subject of The Netherlands Government in California, as a representative of that government.'' Also introduced was Exhibit E, a memorandum from the State Department, Washington, D. C., which it was stipulated contained a ''true statement of the law as interpreted by the Department of State, and that the Government of the United States continues to recognize as the Government of the Kingdom of The Netherlands, the Royal Netherlands Government, which is temporarily residing and exercising its functions in London, and continues to recognize Dr. Alexander Loudon as the duly accredited Envoy Extraordinary and Minister Plenipotentiary of The Netherlands to the United States.'' From this memorandum it appears that ''persons in occupied Netherlands territory who at the time of the occupation were Netherlands nationals'' are considered by the government of the United States not to have had their nationality affected by the occupation but as still retaining their Netherlands nationality, and ''While for the purpose of certain of such laws, rules, regulations or orders Netherlands territory occupied by the enemy may be treated as enemy territory, it is not the territory of the enemy belligerent in occupation but remains Netherlands territory, and is recognized by the Government of the United States as territory occupied by the enemy but belonging to the Netherlands, one of the nations united with the United States in the prosecution of the war.''

The appellant argues that the introduction in evidence of article 9 of the Act of May 15, 1829, does not establish the fact that Netherlanders may inherit under any conditions or that Netherlanders or anyone residing in the United States may inherit and have property paid to them in the United States arising from estates of persons dying in the Netherlands. He overlooks the reference by the Ambassador, in his letter of July 18, 1942, to the fact that ''the Netherlands decedents' estate law does not contain a provision by which

the reciprocity under consideration is denied, [etc.]'' and the additional statement, in the same letter, that as the Royal Netherlands Government ''has not modified the Netherlands decedents' estate law in any shape or fashion, the reciprocity which is the subject of this statement continues in full force and effect.'' These statements would seem to answer satisfactorily the first objection of the appellant that article 9, above mentioned, does not establish that Netherlanders may inherit under any conditions. The second objection is answered also in the quoted statements, for we may assume that the decedents' estate law of the Netherlands effectively disposes of property of a decedent with proper regard to testamentary directions or the rights of succession, and since there is no distinction in that disposition between Netherlanders and citizens of the United States, who, by right of inheritance or testamentary disposition, are entitled to take property located in the Netherlands, it is apparent that the right of citizens of the United States to receive payment within this country of a legacy or a share of an estate originating in the Netherlands is secured, thus meeting the requirement of section 259. We agree in general with the following statements in the brief of respondents. ''The 'right' to take property by inheritance and the 'right to receive' that inheritance by payment in money, have long been recognized as part of the substantive, legal and sanctioned incidents of the normal legal order of society. They are in the same category as the 'right' of life, liberty, free speech, religious worship and of property. The 'right' to receive the benefits of the inheritance is a necessary and inherent corollary to the 'right' to take by inheritance. One is not separable from the other. The one includes the other. If the right to take exists, *afortori* [sic], the right to receive exists. That the exigencies of war may temporarily suspend or defer the remedy to enforce the right *to receive,* does not militate against the right. The right of United States citizens to receive payment in the United States of moneys originating from a Netherlands estate, is now and has been since 1829, a substantive right which has been an integral, inherent and extant feature and part of The Netherlands jurisprudence. Though the country is now temporarily occupied by the Germans, nevertheless, the Royal Netherlands Government, her laws and the attendant rights under the laws are intact, are existing and are recognized as such by the

United States Government.'' Quoting further, ''It will also be observed that the Legislature did not say *when* United States citizens were to receive payment. It used the words 'the rights' to receive. The Legislature therefore necessarily contemplated and had in mind that the availability of the proceeds of such foreign estates for immediate distribution and payment to United States citizens would be controlled by the exigencies of the battlefield. It placed no time or other limitation as to when payment was to be made. It was concerned only with the existence of 'rights' accorded to United States citizens by and under the legally constituted and recognized laws and government of the country of which the alien was a citizen and resident, to receive their inheritance, knowing that such rights persist and carry on in the scheme and order of society in spite of the immediate fluctuations of war, and that, at most, the remedies for the enforcement of the right may be temporarily suspended.'' In this connection we may note that Hendrika Doest, in her petition to determine heirship, did not ask the court to decree an immediate distribution; on the contrary, the prayer in her petition is as follows: ''That upon distribution in this estate the same be delivered to your petitioner Dr. Adrian Hartog for transmission to The Netherlands Embassy in Washington, D. C., where the same is to be deposited in the Riggs National Bank, Washington, D. C., for the credit to the blocked account on the books of said account in the name of the Royal Netherlands Legation, Custodian Account, and that upon the administrator herein receiving the receipt of your petitioner for said distributive share that said administrator be relieved and discharged of and from any and all further duties or obligations in connection with said distribution. . . .'' Payment in this form will, as we understand it, conform strictly with the requirements of Executive Order No. 8785 of the President of the United States, dated June 14, 1941, governing transactions by license issued by the Secretary of the Treasury ''by, or on behalf of, or pursuant to the direction of any foreign country designated in this Order, or any national thereof,'' and License No. W 1722 issued November 23, 1942, by the Secretary of the Treasury.

 The appellant claims that the respondent, Hendrika Doest, has failed to sustain the burden cast upon her by sec-

tion 259.1 to establish the fact of existence of the reciprocal rights set forth in section 259, but, in our opinion, she made a sufficient showing of meeting the requirements by introducing the statement of the Ambassador of The Netherlands to the effect "that under Netherlands law the reciprocity as meant in sections 259, 259.1 and 259.2 of the California Code is accorded citizens and residents of the United States." The appellant introduced no evidence whatever to contradict or offset this showing and accordingly it prevails.

The appellant further states in his reply brief, "By no stretch of the imagination or tedious explanation can a finding be implied that any inheritance would have been paid within the United States from an estate arising in The Netherlands. Respondent must prove to the court that payment would be made within the United States. That is the meaning of the reciprocal right required by the sections of the Probate Code involved here." We note that the trial judge made a sufficient finding upon that subject in acting upon the petition of John C. Doest for partial distribution, for he found "that by the laws of The Netherlands citizens of the United States have the right to inherit real and personal property left by a citizen and resident of The Netherlands, *and that reciprocal rights of inheritance exist between the citizens and residents of the United States and the citizens and residents of The Netherlands;* the court further finds that although the Kingdom of The Netherlands has been invaded and occupied by Germany, the Government of The Netherlands and her laws with their attendant rights have not been abrogated by any authority recognized by the United States or The Netherlands, but that said Netherlands' Government and the laws thereof, and particularly the rights of United States citizens and residents to inherit from estates of Netherlands' citizens and residents, are now and were at the date of decedent's death, present and existing." (Italics added.) He made a similar finding in the petition of Hendrika Doest to determine heirship, and as a conclusion of law stated "that reciprocal rights of inheritance exist between citizens and residents of the United States and the citizens and residents of The Netherlands. That said petitioner Hendrika Doest has satisfied the requirements in establishing that such reciprocal rights of inheritance exist and *that said John C. Doest,*

*a brother of the decedent, is not entitled to participate in any share or to any extent in this estate but that the sole and only heir at law is said petitioner, Hendrika Doest."* (Italics added.) The italicized portion of the last quotation constitutes, in our judgment, the proper conclusion of law, while the balance of the quotation is, in fact, not a conclusion of law but a misplaced finding. Its efficacy as a finding is, in no way, affected by that mistake *(New York Life Ins. Co. v. Occidental Pet. Corp.* (1941), 43 Cal.App.2d 747 [111 P.2d 707]; *Otis v. Winter Investment Co.* (1934), 138 Cal.App. 682 [33 P. 2d 4]).

Both orders are affirmed.

Shinn, J., and Wood (Parker), J., concurred.